FILED'07 JAN 09 11:03USDC·ORM

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MARK DENNISON,                        Civil No. 06-77-CO

        Plaintiff,                        ORDER

   v.

CITY OF PHOENIX, et al.

        Defendants.

COONEY, Magistrate Judge:

    Plaintiff, a former volunteer reserve police officer with Defendant City of Phoenix, brought this action in state court alleging claims for civil rights violations under 42 U.S.C. § 1983 and supplemental state claims. (Notice of Removal - Amended Complaint). Plaintiff seeks economic and non-economic damages, wages and penalty wages, costs, and attorney's fees. (Id. at 13). Defendants removed the action to federal court pursuant to 28 U.S.C. § 1441(b) as the court would have original jurisdiction over Plaintiff's 42 U.S.C. § 1983 claims. This Court has jurisdiction

pursuant to 28 U.S.C. § 1331.

The parties have consented to have judgment entered by a magistrate judge pursuant to 28 U.S.C. § 636. Before the court are Plaintiff's motion for partial summary judgment (#33) and Defendants' motion for partial summary judgment (#38). The court granted Plaintiff's motion to strike (#51).

## I.    FACTS

In making the following findings of fact, the Court considers the evidence in the light most favorable to the non-moving party:

The City of Phoenix Police Department operates a Reserve Officer Program. (Furnanz Affidavit Exhibit T at 1). It is the policy of the program that "its members serve solely at the discretion of the Chief of Police and/or the Reserve Program Director." (Id.). Plaintiff signed off that he received the Police Department's policy manual. (Kershaw Depo. 44; Furnanz Affidavit Exhibit U). Reserve officers and volunteers are not covered by the City's personnel handbook. (Kershaw Depo. 37-38).

The City of Phoenix Personnel Handbook states that:

> This policy shall apply to all employees unless other provisions are made by either union contracts or personal service contracts. If either union contracts or personal service contracts are silent on a provision contained in this policy manual, the manual shall be in effect.

(Furnanz Affidavit Exhibit V at 2). The handbook defines an employee as "A person who receives wages or salaries from the City." (Glatte Affidavit Exhibit 11). The handbook also defines temporary employees as "an employee who has been appointed for a limited and specified period of time, either full or part time."

ORDER - Page 2

(Glatte Affidavit Exhibit 11).  Chief Kershaw considered Plaintiff a temporary employee, as he filled in when needed.  (Kershaw Depo. at 39-40).

The handbook contains a discipline and grievance procedure which is applicable to all nonexempt employees.  (Glatte Affidavit Exhibit 11).  The handbook also contains several disclaimers that: "its contents should in no way be construed as a contract" ; the "materials and policies in this manual are subject to change, exception, and interpretation"; and that the policies could be change unilaterally by the City Council irrespective of notice to individual employees.  (Furnanz Affidavit Exhibit V).

On December 4, 2002, Plaintiff was sworn in as a volunteer reserve officer for the City of Phoenix, and he began volunteering as an unpaid volunteer reserve officer.  He was commissioned as a peace office and was responsible for enforcing the criminal laws of Oregon.  (Dennison Affidavit ¶¶ 2-4).

In April of 2003, Plaintiff achieved a reserve level A, the highest position for a reserve officer, which entitled Plaintiff to work without a field training officer.  (Kershaw Depo. at 46). Plaintiff completed the necessary prerequisites for full time employment and was qualified to conduct duties as a full time police officer.  (Id.).

On April 21, 2003, Plaintiff began receiving wages from the City of Phoenix.  After that time, he was paid for every shift he worked.  (Dennison Affidavit ¶4).

During the time Plaintiff received wages, he was not notified

ORDER - Page 3

that he was on probation.  (Dennison Affidavit ¶7).  From April 2003 through November 2003, Plaintiff worked in excess of 80 hours every calender month.  (Id. ¶5).  He was paid a total of $7,994.25 for the year 2003.  (Id. ¶6).

On November 25, 2003, Chief Kershaw gave all department members an order not to go through other peoples personal property. (Kershaw Depo. at 53-56, 70-71).  On December 21, 2003, Plaintiff went through Chief Kershaw's desk, removed a key, and used it to access another officer's file cabinet.  (Dennision Depo. at 127).

Plaintiff then called Chief Kershaw to tell him what he discovered in the file cabinet.  (Kershaw Depo. at 46, 50).  Chief Kershaw was irate that Plaintiff had gone through his desk and the other officer's file cabinet.  (Id. at 35).

On December 23, 2003, Chief Kershaw put Plaintiff on unpaid leave for going through the desk and file cabinet, and informed Plaintiff that he was considering discipline up to and including termination.  (Id. at 18-19; Dennison Affidavit ¶8; Furnanz Affidavit Exhibit I).  On January 13, 2004, Chief Kershaw interviewed Plaintiff regarding his conduct.  (Kershaw Depo. at 21).

After the interview, Chief Kershaw made the decision to bring Plaintiff back on duty, while reducing his status from a Level A to a Level C.  (Kershaw Depo. at 34, 35-37).  Plaintiff was never informed that Chief Kershaw intended to demoted him from a Level A to a Level C officer for the unauthorized entries.  (Dennison Affidavit ¶8).  A reserve Level C would have required Plaintiff to

ORDER - Page 4

patrol only with a Field Training Officer and Plaintiff would no longer be paid.  (Id. at 22).

In November of 2003, Plaintiff applied for a regular, full time police officer position with the City of Phoenix.  (Furnanz Affidavit Exhibit J).  In connection with this application, on January 19, 2004, Chief Kershaw began an investigation into Plaintiff's background.  (Kershaw Depo. at 98; Furnanz Affidavit Exhibit K).  As a result of information Chief Kershaw learned in connection with the background check, on February 10, 2004, Chief Kershaw terminated Plaintiff from the reserve officer program for allegedly being untruthful on his employment application.  (Kershaw Depo. at 38, 71, 80-81; Furnanz Affidavit Exhibit K).

Chief Kershaw never notified Plaintiff of the charges against him or the punishment that was contemplated prior to his termination.  (Kershaw Depo. at 29).  Plaintiff was not granted or allowed a pre-termination hearing.  (Id. at 29-30).

After his termination, Plaintiff located a copy of the City of Phoenix Personnel Policy and Procedure Manual.  (Dennison Affidavit ¶10).  Plaintiff complied with all the procedures to obtain a hearing.  (Id.).  Plaintiff contested the accuracy of the charges and demanded a post-termination hearing.  (Id.).  Plaintiff's request for a hearing was never granted.  (Kershaw Depo. at 33-34).

After Plaintiff's termination, Chief Kershaw notified the Oregon Depart of Public Safety Standards and Training (DPSST) by submission of a Personnel Action Report.  The report listed Plaintiff as an employee of the Phoenix Police Department and

ORDER - Page 5

disclosed that Plaintiff was discharged "for cause". (Id. at 30).

On February 20, 2004, Chief Kershaw, by letter, asked the Jackson County Sheriff's Department to withdraw the City of Phoenix's endorsement of Plaintiff's concealed handgun permit. (Glatte Affidavit ¶8). This letter was included in the Plaintiff's concealed weapons permit file, which Plaintiff's attorney was able to access through Jackson County. (Second Glatte Affidavit ¶5).

On March 4, 2004, Jackson County revoked Plaintiff's concealed weapons permit, because it claimed Plaintiff was likely to be a danger to himself or others as a result of his "mental or psychological state, as demonstrated by past pattern of behavior or participation in incidents involving unlawful violence or threats of unlawful violence." (Dennison Affidavit ¶11). On May 24, 2004, Jackson County Circuit Court Judge Mark Shiveley held a public evidentiary hearing, and the court rescinded the revocation. (Glatte Affidavit ¶11).

## II.  **LEGAL STANDARDS**

A moving party is entitled to summary judgment as a matter of law "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issues as to any material fact . . . ." Fed. R. Civ. P. 56 (c); Freeman v. Oakland Unified Sch. Dist., 291 F.3d 632, 636 (9th Cir. 2002). The court cannot weigh the evidence or determine the truth but may only determine whether there is a genuine issue of fact. Playboy Enters., Inc. v. Welles, 279 F.3d 796, 800 (9th Cir. 2002).

ORDER - Page 6

The moving party must carry the initial burden of proof. Celotex Corp. v. Catrett, 477 U.S. 317, 322-24 (1986). The moving party meets this burden by identifying for the court portions of the record on file which demonstrate the absence of any genuine issue of material fact. Id.; Devereaux v. Abbey, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc). In assessing whether a party has met its burden, the court views the evidence in the light most favorable to the non-moving party. Allen v. City of Los Angeles, 66 F.3d 1052, 1056 (9th Cir. 1995). All reasonable inferences are drawn in favor of the non-movant. Gibson v. County of Washoe, 290 F.3d 1175, 1180 (9th Cir. 2002), cert. denied, 537 U.S. 1106 (2003).

If the moving party meets its burden with a properly supported motion, the burden then shifts to the opposing party to present specific facts which show there is a genuine issue for trial. Fed. R. Civ. P. 56(e); Auvil v. CBS "60 Minutes", 67 F.3d 816, 819 (9th Cir. 1995); see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 & n.4 (1986). If the moving party presents evidence which, taken by itself, would establish the right to a directed verdict at trial, the motion for summary judgment must be granted, in the absence of any significant probative evidence tending to support the opposing party's theory of the case. THI-Hawaii, Inc. v. First Commerce Fin. Corp., 627 F.2d 991, 993-94 (9th Cir. 1980); First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 290 (1968). Conclusory allegations, unsupported by factual material, are insufficient to defeat a motion for summary judgment. Taylor v.

ORDER - Page 7

List, 880 F.2d 1040, 1045 (9th Cir. 1989).  Instead, the opposing party must, by affidavit or as otherwise provided by Rule 56, designate specific facts which show there is a genuine issue for trial.  Devereaux, 263 F.3d at 1076.

### III.  DISCUSSION

Plaintiff moves for partial summary judgment on his due process claims arguing that:

1) Plaintiff was a full-time law enforcement officer as defined by ORS 236.350 and OAR 259-008-0005(14) which entitled him to a due process hearing under ORS 236.360;

2) Plaintiff was an employee under the City of Phoenix Personnel Policy and Procedure Manual and the Phoenix Police Manual which entitled him to certain procedures before his discharge;

3) Plaintiff was not provided a pre-termination or post-termination hearing in violation of the Due Process Clause; and

4) Plaintiff was denied a liberty interest in continuing in his profession when Defendant notified DPSST that Plaintiff was discharged "for cause" by the submission of a Personnel Action Report and by notifying Jackson County that Plaintiff had been discharged for cause and withdrawing the City's endorsement of Plaintiff's concealed weapons permit without providing Plaintiff with a hearing prior to such disclosures.

In support of their motion for partial summary judgment and in response to Plaintiff's motion for partial summary judgment, Defendants make the following arguments:

1) Plaintiff does not have a property interest under ORS Chapter

ORDER - Page 8

236.350 *et seq* as he was a reserve officer, not a full-time DPSST certified police officer;

2) OAR 259-008-0005(14) defines a full-time employment for training requirements, not for the purpose of disciplinary procedures and the regulation omits from coverage reserve officers, citing ORS 181.610(3) and ORS 181.640(17);

3) since Plaintiff was not a full time paid police officer for more than 12 months, ORS 236.370(1) specifically excludes him from Chapter 236;

4) statutory provisions do not apply to Plaintiff since the City of Phoenix has its own civil service disciplinary system, citing ORS 236.370(4);

5) Plaintiff's liberty interests were not violated because there was no public disclosure and the alleged disclosures were not made in connection with the termination of employment;

6) the withdraw of sponsorship of a gun permit is not a public disclosure;

7) the State DPSST form specifically required the reporting of terminations of reserve officers and was not a public disclosure; and

8) the alleged disclosures occurred after Plaintiff's termination, not in conjunction with it.

In response to Defendants' motion for partial summary judgment, Plaintiff makes the following arguments:

1) Plaintiff has a property interest because he was a full time employee under OAR 259-008-0000(14), Plaintiff was not required to

ORDER - Page 9

be certified, and the probationary period is not to exceed 12 months;

2) Plaintiff was never on probation;

3) both State law and the city code apply because Plaintiff was covered by both;

4) Plaintiff's liberty interest was invoked by Defendants' actions of public disclosure through the DPSST personnel action report and the letter to the Jackson County Sheriffs's Department regarding the concealed weapons permit, and those disclosures were in connection with termination of employment;

5) the "for cause" termination and label stigmatizes Plaintiff from pursuing his chosen profession in the State of Oregon;

6) the DPSST form stating Plaintiff was terminated "for cause" is fully open to the public;

7) when Defendants notified the Jackson County Sheriff's Department of Plaintiff's termination and the withdrawal of sponsorship of his concealed weapons permit, and when that letter was used in a hearing to reinstate Plaintiff's permit, it was a public disclosure and the concealed weapons file and the court documents are open to the public; and

8) the statement to DPSST and the letter to the Sheriff's Department were made in connection with Plaintiff's termination of employment since he did not voluntarily resign.

In response to Plaintiff's motion for partial summary judgment, Defendants make the following arguments:

1) the City's policies did not provide Plaintiff with a property

ORDER - Page 10

right since reserve officers are not covered by the City's personnel manual and can be hired and fired at will; and

2) the manual expressly stated that it did not create any contractual rights to any grievance procedures.

In reply, Plaintiff argues that:

1) Plaintiff was a full time paid employee;

2) Plaintiff's property right in continued employment became vested once he satisfied the state law requirements for full-time employment; and

3) Plaintiff had a liberty interest by virtue of Defendants' public disclosures without allowing Plaintiff an opportunity to clear his name.

In reply, Defendants argue that:

1) Plaintiff has no liberty interest since he was not covered by the personnel manual because he was a reserve officer, even if he was covered the manual does not create any contractual rights to any grievance procedures, and the Plaintiff failed to work in excess of 80 hours per month for the 90 days prior to the end of his reserve officer service;

2) there was no liberty interest violation since there was no public disclosure and no actions taken in connection with the termination of employment; and

3) there was no contractual right to continued employment, the employee handbook specifically states that under no circumstances do the statements it contains create an express or implied contract.

ORDER - Page 11

**Property Interest**

A government employee has a constitutionally protected property interest in continued employment when the employee has a legitimate claim of entitlement to the position. Portman v. County of Santa Clara, 995 F.2d 898, 904 (9th Cir. 1993). Under Oregon law, public employee's rights arise solely from statutes and regulations; property interests for public employees cannot arise solely from an implied or express contract of employment absent some underlying statute or regulation. Brady v. Gebbie, 859 F.2d 1543, 1549 (9th Cir. 1988); Harrington v. City of Portland, 677 F. Supp. 1491, 1499 (D. Or. 1987).

An employee who has no job tenure rights may be constitutionally terminated without prior notice or a hearing unless a statute, rule, or contract confers a property interest. Trivoli v. Mult. Co. Rural Fire Prot., 74 Or. App. 550, 554 (1985). Therefore, Plaintiff is required to show that he has a property interest in his employment. See Perry v. Sinderman, 408 U.S. 593 (1972).

In order to be entitled to the procedural protections of the Fourteenth Amendment, Plaintiff must demonstrate that Defendants' actions deprived him of a property or liberty interest. Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 538 (1985); Bd. of Curators of Univ. of Mo. v. Horowitz, 435 U.S. 78, 82 (1978). "A section 1983 claim based upon procedural due process thus has three elements: (1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government;

ORDER - Page 12

(3) lack of process."  <u>Portman v. County of Santa Clara</u>, 995 F.2d

898, 904 (9th Cir. 1993).    A  government  employee  has  a

constitutionally  protected  property  interest  in  continued

employment when the employee has a legitimate claim of entitlement

to their position.  <u>Id</u>.

Under Oregon law a police officer is defined as an officer or

member of a law enforcement unit who is employed full-time as a

peace officer commissioned by a city or county,  and who is

responsible for enforcing the criminal laws of this state or has

been certified as a peace officer in this or any other state.  ORS

§§ 181.610(14), 236.350(1).  OAR 259-008-0005(14) defines full time

employment  as  "the  employment  of  a  person  who  has  the

responsibilities  as  defined  in  ORS  181.610(3),  (5),  (9),  (13),

(14),  (18) of this rule, who has the responsibility for, and is

paid to perform the duties described in the above statute and

administrative rule for more than 80 hours per month for a period

of more than 90 consecutive calendar days."

"A certified reserve officer means a reserve officer who has

been designated by a local law enforcement unit, has received

training necessary for certification and has met the minimum

standards and training requirements established under ORS 181.640."

ORS § 181.610(3).  ORS § 181.665(1)(b) states that no person may be

employed as a police officer, or utilized as a certified reserve

officer, by any law enforcement unit for more than 18 months unless

... (b) the person has been certified as being qualified as a

police officer or certified reserve officer under the provisions of

ORDER - Page 13

ORS 181.610 to 181.712.    Under ORS § 236.370, ORS 236.350 to 236.370 do not apply to disciplinary action taken against police officers who are: (1) in an initial probationary period of employment that does not exceed 12 months or in a probationary period under a collective bargaining agreement which is in excess of 12 months; or (4) Under a county or municipal civil service system which provides police officers with disciplinary action protections at least equivalent to those provided under ORS 236.350 and 236.360.

The Plaintiff was an uncertified reserve officer, not a full time police officer with the City of Phoenix.    The Plaintiff was terminated in connection with an investigation resulting from his application to become a full time police officer.

In addition, the Plaintiff had been paid as a reserve officer for less than 12 months.    Therefore, under ORS § 236.370, ORS 236.350 to 236.370 do not apply to Plaintiff since he was still inside the initial 12 month probationary period and his paid employment did not exceed the 12 month period.

The City of Phoenix Personnel Handbook states that:

> Under no circumstances will this document or any statement contained herein constitute or create an express or implied contract or become a term of a contract between the City of Phoenix and any employee.

(Furnanz Affidavit Exhibit V at 3).    There was no evidence that either an express or implied contract existed between the Plaintiff and the Defendants, and the personnel handbook specifically states that such a contract could not be entered into between the

Plaintiff and Chief Kershaw.

> No person has the authority to make any commitment that
> an employee will be employed for a specified period of
> time or will have any security of tenure.  Department
> Heads and supervisors do not have the authority to advise
> an employee that they will be employed for any length of
> time or as long as their work is acceptable, or to make
> any promises inconsistent with the principles set out in
> this manual.

(Furnanz Affidavit Exhibit V at 3).  Therefore, the Plaintiff was

an at will employee without job tenure rights and could have been

constitutionally terminated without prior notice or a hearing.

The notice required by due process can be actual or

constructive.  Beckwith v. County of Clark, 827 F.2d 595, 598 (9th

Cir. 1987).  If the employee knew in fact that they would lose

their property interest by taking certain action, due process is

satisfied.  Id.  If the circumstances were such that the employee

should have known of the impending loss of a property right, then

due process requirements are satisfied.  Id.  The burden is on the

Plaintiff to show a failure of notice.  Id.  The personnel policy

specifically provided that it was subject to modification.

The City of Phoenix Personnel Handbook states that:

> The materials and policies contained in this manual are
> subject to change, exception, and interpretation by the
> City Council of the City of Phoenix as needs and problems
> dictate.  The City of Phoenix reserves the right to make
> changes, to update, to delete, or to add to these
> policies, rules, procedures and benefits at any time.
> Policies contained in this manual may be changed
> unilaterally by the City of Phoenix by motion of the City
> Council, irrespective of notice to individual employees.

(Furnanz Affidavit Exhibit V at 3).  Because Plaintiff was not a

tenured employee, he was not entitled to notice or a hearing.  Even

ORDER - Page 15

if Plaintiff was entitled to any notice, Plaintiff knew or should have known that his property interest could have been eliminated based on the circumstances. The personnel handbook specifically states that it shall apply to employees, and does not mention temporary employees other than to define them. (Furnanz Affidavit Exhibit V at 2). The handbook defines temporary employees as "an employee who has been appointed for a limited and specified period of time, either full or part time." (Glatte Affidavit Exhibit 11). Because Plaintiff was a temporary employee the handbook does not provide him with a remedy.

Plaintiff has not shown that he has a legitimate claim of entitlement to employment and, thus, he has no protected property interest. Defendants' motion for summary judgment as to Plaintiff's claim on this ground is granted.

**Liberty Interest**

Plaintiff contends that he was denied a liberty interest because he was denied his rights of pursuing his chosen vocation, and his reputation was damaged. The liberty interest protected by the Due Process Clause includes an individual's freedom to work and earn a living. Portman, 995 F.2d at 907. A liberty interest is implicated where a person's good name, reputation, honor, or integrity is damaged and the circumstances of the person's dismissal impose some stigma or other disability which forecloses further educational or employment opportunities. Brady, 859 F.2d at 1553; Bd. of Regents of State Colleges v. Roth, 408 U.S. 564, 572-74; Harrington, 677 F. Supp. at 1500. The charges must amount

ORDER - Page 16

to accusations of moral turpitude--dishonesty or immorality--to invoke constitutional protection. <u>Hyland v. Wonder</u>, 972 F.2d 1129, 1142 (9th Cir. 1992); <u>Harrington</u>, 677 F. Supp. at 1501. A liberty interest is established where the accuracy of the charge is contested; the charge is made public; and the charge is made in connection with termination of employment. <u>Brady</u>, 859 F.2d at 1552-53; <u>Vanelli v. Reynolds Sch. Dist. No. 7</u>, 667 F.2d 773, 777-78 (9th Cir. 1982). The charges must be published during the termination process. <u>Brady</u>, 859 F.2d at 1552-53; <u>Vanelli</u>, 667 F.2d at 777-78. Statements made after plaintiff's discharge cannot establish violation of a liberty interest. <u>See</u> <u>Botefur v. City of Eagle Point, Oregon</u>, 7F.3d 152 (9thCir. 1993).

Even if the reasons for the employee's termination are included in the employee's personnel file, the employee must show that there is a likelihood that the information will be disclosed. <u>See</u> <u>Brandt v. Bd. of Co-op. Educ. Serv., Third Supervisory Dist., Suffolk County, N.Y.</u>, 820 F.2d 41, 44 (2nd Cir. 1987). "Absent expungement, placement of stigmatizing information in an employee's personnel file constitutes publication when the governing state law classifies an employee's personnel file as a public record." <u>Cox v. Roskelley</u>, 359 F.3d 1105, 1112 (9th Cir. 2004).

ORS § 192.501 states that a personnel discipline action, or materials or documents supporting that action are exempt from disclosure under ORS 192.410 to 192.505 unless the public interest requires disclosure in the particular instance. ORS §192.501(12). ORS 192.502 further provides that "information submitted to a

ORDER - Page 17

public body in confidence and not otherwise required by law to be submitted, where such information should reasonably be considered confidential, the public body has obliged itself in good faith not to disclose the information, and when the public interest would suffer by the disclosure" is exempt from disclosure under ORS 192.410 to 192.505.   ORS § 192.502(4).   In addition, "public records or information described in this section, furnished by the public body originally compiling, preparing or receiving them to any other public officer or public body in connection with performance of the duties of the recipient, if the considerations originally giving rise to the confidential or exempt nature of the public records or information remain applicable" are also excluded. ORS § 192.502(10).

Under ORS § 192.501(12) and 192.502(4)(10), the request sent to the Jackson County Sheriff's Department requesting that the City of Phoenix endorsement of Plaintiff's concealed weapons permit be withdrawn, was not a public disclosure.  The request fell with ORS § 192.502(10) since this information was furnished in connection with the performance of the duties of the Sheriff's Department to regulate concealed weapons permits, and the letter was a document supporting a personnel discipline action under ORS §192.501(12). Since this letter was exempt from disclosure, it does not qualify as a charge made in public.

In Oregon, "whenever public safety personnel ...are ... discharged, ... the department head shall report this information to the Department on a Personnel Action Report (DPSST Form F-4)

ORDER - Page 18

within ten (10) business days of the action". OAR 259-008-0020(2).
The report to DPSST is exempt from disclosure under ORS
192.501(12), and is a report required to be filed by law. This
report does not qualify as a charge that is made public.

Finally the letter and the DPSST report were written after
Plaintiff's employment had already been terminated. As such, they
do not establish violations of a liberty interest.

Here, Plaintiff offers no evidence in support of his liberty
interest claim that Defendants said or published anything
publically about Plaintiff, or made any statements in connection
with the termination of Plaintiff's employment. Accordingly,
Defendants' motion for summary judgment on this ground is granted.

**State claims**

Plaintiff alleges various claims. The court may decline to
exercise supplemental jurisdiction over a state claim if it "has
dismissed all claims over which it has original jurisdiction." 28
U.S.C. § 1367 (c)(3); Ove v. Gwinn, 264 F.3d 817, 826 (9th Cir.
2001) (citing San Pedro Hotel Co. v. City of Los Angeles, 159 F.3d
470, 478 (9th Cir. 1998)). The Court can remand the remaining
state claims to state court. Brown v. Lucky Stores, Inc. 246
F.3d 1182, 1189 (9th Cir. 2001). In this case, the court finds
remand of the Plaintiff's remaining state claims is appropriate.

## IV.  ORDER

Based on the foregoing, it is ordered that Plaintiff's motion
for partial summary judgment (#33) is denied, Defendants' motion
for partial summary judgment (#38) on Plaintiff's section 1983

ORDER - Page 19

claims is granted, and this case is remanded to state court.

DATED this ___9___ day of January, 2007.

_____

UNITED STATES MAGISTRATE JUDGE

ORDER - Page 20